2020-2190. Mr. Green. Thank you, Your Honor, and may it please the Court, Kevin Green for the Washington Federal Plaintiffs. And if there's one point I want to make today, it's a distinction from the prior cases. And first, as has been touched on, this is an unprecedented conservatorship. There's nothing remotely comparable, probably even to the duration of it, much less the terms of it. But a key distinction on the direct derivative standing point is that the conservatorship took away the shareholders' voting rights. And I want to focus on that in particular, because it's not presented in the other cases. And that claim, that injury, can only be direct. Even if dividends are debatable, taking away the shareholders' right to vote, shareholder democracy, the ability to influence corporate affairs, is a direct injury. And indeed... Is your claim then dependent upon the conclusion that the appointment of the conservator was unlawful? Your Honor, that has been alleged. And if I can clarify one point on that, it is alleged to be unlawful, but authorized, as within the scope of officials, the government officials' official duties. But it doesn't necessarily hinge on that. Of course, a taking can result from lawful conduct. But we've pled the strongest case we can here, that the conservatorship did not meet the statutory prerequisites for the Recovery Act, and that the government took over Fannie and Freddie to use them to stabilize the national mortgage market on the backs of the shareholders and at their expense. Okay, so putting aside the question of whether or not you timely filed a complaint and whether or not those are direct versus derivative, let me just ask you about the timing here. So the imposition of the conservatorship occurred on September 6, 2008. But the taking away of the voting rights, the taking away of the dividends, the property interest and the rights to transfer stock, receive dividends, vote at shareholder meetings, all of those occurred after the conservatorship was imposed, correct? I don't think so, Your Honor. They occurred as a result of the conservatorships. I don't think that the precise timing is necessarily conclusive. It was the fact of imposing the conservatorships that it was a takeover and the consequences that flowed from that. And that the government's actions, as we've Okay, so then how do you deal with 4617A, 5A, where there is a very short window in which to challenge the conservatorship? And now you're way outside of that window. Well, not just positive, but the Court of Federal Claims agreed with us on that. And I would just invite the Court's attention to the plain language of the statute. It refers to an action by the regulated entity, which alludes to a potential derivative claim. But these are shareholders, it's not the regulated entity. And importantly, seeking equitable relief, removing the conservator, which quite understandably, if there's going to be any unwinding, and practically speaking, that's hard to imagine. But if that is to occur, then that needs to be sought promptly. It says nothing about damages claims. It says nothing about constitutional claims. And for reasons other counsel have referred to, it would be a stretch under rules of statutory construction to read the statute that way. So we agree with the Court of Federal Claims that it simply doesn't apply here, that the statute of limitations was a six-year statute. And that, but that has to assume that your claims are direct and not derivative. That I'm not sure about, because there just isn't case law on this particular provision, and framed through that lens of direct derivative. But just applying the statute as it's written, it doesn't govern takings claims for damages stemming from a conservatorship. It just doesn't apply to this. All right, what's your response to RIP, where, where we specifically said that to the extent that plaintiff claims it's entitled to prevail because the agency acted in violation of statute or regulation, that you can't repackage that issue as a takings, rather than to, through a administrative review proceeding? As I read that decision, it doesn't involve a very clear statute here that says, this is when you need to go through a particular procedure when you're challenging the conservator's appointment and potentially removing the conservator. I didn't see a comparable statute to any of that. Maybe there is, but I mean, this, this is governed by the statute here. And I think because it's very specific and it doesn't, and shouldn't be read to bar constitutional claims that it doesn't interfere with those. So there's nothing inconsistent with the statute, section eight, five, and holding that the claims here, either direct or derivative, although we believe they're direct, may proceed. I mean, at least that they're standing to hear them. I mean, getting the merits of, of, of regulatory taking analysis under Penn Central and so on, we haven't gotten to that, but I think the core of the statute is, is something that again, it's, it's unscrambling the egg is in the Delaware jurisprudence of potentially removing a conservator, a pretty extreme action that, that ought to be sought in 30 days or less. And that's what the statute is directed at. And that's now, if I, I may go on particularly because judge Prost is, is on this panel. I want to address the star decision and why that doesn't make the claims here derivative. And the key distinction is that star was a bailout. It was not a takeover. The government loaned $85 billion to AIG when it was literally on the verge of bankruptcy the next day and obtained an 80, 80% equity interest. And so the argument was that that diluted the other shareholders interests, not that it destroyed the value of their shares. And again, a conservatorship and this one in particular is, was a real watershed event for the stockholders and the impact on the value, not just the value of their shares, but it was personal to them resulting from this so that the government could bail out the national mortgage market through a conservatorship. And we've not seen anything like this before. But I think the, the analysis, the rationale and the scope of star flows from that difference. And so it really is a star is, is read, and I'm trying to put this in simple terms as a which of course is derivative. And we don't have that here because the stockholders are saying that our, our shares were worth a certain amount and then plummeted dramatically in value as a result of the conservatorship that was imposed in violation of the recovery act or not authorized by it to stabilize the national mortgage market. And I want to go back to voting rights and the distinction there, because even the voting rights claim in star, the argument was that voting rights were diluted, not that they were eliminated. And the latter is our case. And in fact, shareholder democracy continued in star. So the part of the argument was that the shareholders, the government had somehow maneuvered things so that the shareholders couldn't undertake a vote on something. Well, they still had the right to vote. What does that tell you? Here, they didn't have that. And so the takings claim is for that bundle of rights. It's the loss of value between September 6, the day of the conservatorship and September 8, when the shares were worth 10% of what they were before. And there's the voting rights, and I think also the dividend rights. And I understand that this may be from the prior discussion, this may be debatable, and a little closer. But that is peri capital, which is not a takings claim, but it is the same conservatorship, where the DC Circuit said that direct claims do not pass through the succession clause. Well, that also tells me that there could be direct claims that exist preceding the conservatorship. But did you really plead a cognizable injury to voting rights? Yes, Your Honor, and I believe that's at paragraph 30 and 31 of our complaint, of the First Amendment complaint. And that is most assuredly pled, and that would be at the Joint 30, 31, and I think 32. Mr. Green, you said you wanted to address Starr because Post was on the panel. Starr is relevant or not, irrespective of whether the author of Starr is on the panel. Oh, I fully understand that, Your Honor. It's just given that connection, I meant nothing I want to go back to this notion of diminution of value. And the conservatorship destroyed the value for the stockholders, many of whom had held Fannie and Freddie stock, much like people used to hold General Motors. And before 2008, if we go back in the picture of those events, that was a very stable and predictable investment. And I think nobody would have predicted or foreseen a situation where the government would take over Fannie and Freddie and use it for other purposes, and as we've alleged in detail, with coerced consent. And I'm not going to get into that because we've briefed it at length. I see that I'm running into my rebuttal time. Unless there are any questions, I'd like to reserve the remainder. We will do that, Mr. Green. Mr. Stern. Thank you. Thank you, Your Honor, Mark Stern for the United States. The claim here, we think was as an initial matter, we think was clearly time barred. We also think that it is clearly derivative that the if I understand the what the request for relief is, it appears to be the difference in the share value of the enterprises between two dates. And that is quintessentially, again, a derivative claim. The voting rights allegations formed are in the complaint. They don't form a very big part of the complaint. And the relief sought has always been money that would have gone to the enterprises. We also think that the note also that the entire basis of this, that there was impermissible coercion, of which there is like there's sort of threadbare allegations that don't survive Iqbal and Twomley, there's also the fact that there were other bases that like are that for the under which even if there had been no consent, the plaintiffs like recognizes that there was 46.783C allows the permitted the conservatorship to go forward if there was an unsafe or unsound condition to transact business. And every other plaintiff in these cases, nobody disputes that this was a dire emergency. And that's why everything moved at the speed that it did. Mr. Stern, can I ask you, with respect to the time bar, is it your position that the Court of Federal Claims was wrong to say that that time bar only applies to the enterprises, so it wouldn't impact any direct claim by the stockholders because that provision is the only of sovereign immunity with respect to the ability of anyone to object to the conservatorship? It is the only means of doing it, but it's that what Congress anticipated was that shareholders would go to the boards and ask the boards in classic shareholder derivative fashion to reject the claim and to reject the conservatorship. And that was what, and instead what we have is, and there's also where the suit was to bring the suit and the suit was going to be brought in district court, not in the Court of Federal Claims. And Washington Federal recognizes that trying to buy such a claim like this one was supposed to be brought within 30 days. But even if it wasn't time barred, and we think it was, the claim was a derivative one as the Court of Federal Claims did recognize. And the assumptions on which any of this rests are untenable because they didn't need the consent of the enterprises to impose the conservatorship. And the allegations of coercion and this after years of discovery are sort of absolutely unsupported by any sort of fact or allegation other than the general kind of assertion that doesn't survive. So there's a whole menu. So I'm trying to understand how this works. So RIF says that you can't challenge whether an agency action violates a statute when you haven't asserted it within the regulatory framework for allowing that, right? That's correct. Okay. So what is left if we find that the Court of Federal Claims was wrong about the time bar? Is that the end of the inquiry? Do we still have to address the direct versus derivative nature of these things? No. We think that the case should be dismissed at the threshold because of the time bar. Okay. But RIF doesn't imply that you would still have to proceed just simply on the assumption that the imposition of the conservatorship was okay? I'm sorry. I'm not fully sure I understand the question. Well, RIF doesn't say that taking these claims are necessarily barred, but it says that it means you have to proceed on the assumption that the imposition of the conservatorship isn't challengeable anymore. So my question is then what's left if it's not challengeable under RIF? Well, we don't think that the imposition of the conservatorship as a basis for the suit is available if the plaintiffs had the opportunity to look under the statute to proceed, did not do so, and filed a separate claim years later. So we don't think that there is anything left in light of the time period created specifically by the statute. But as I say, there are alternative grounds, including that on which the Court of Federal without reaching any of the other grounds. I'm happy to answer any other questions that the Court may have. Thank you, Mr. Stern. I'm not hearing any. So Mr. Green has some of other time. Thank you, Your Honor. And on the timing issue in the statute, again, it's important to emphasize what this case is about is pled at the pleading stage. It seeks damages for violations of the Fifth Amendment takings cause. It doesn't seek to unwind anything. It doesn't challenge the appointment of the conservator. It challenges the consequences of that in violation of the Fifth Amendment. And the statute is very clearly written. It refers to the regulated entity bringing a claim, which it would have an interest in doing in contrast to shareholders, potentially to challenge and obtain the removal of the conservator. And that is just not this case. It's very narrow. And so we employ a lot into that statute to say that a Fifth Amendment takings claim of some kind would have to be brought in, say, federal district court against the government, which, of course, the district court wouldn't have jurisdiction to hear. So for all those reasons, it just doesn't add up that the shareholders here, that that would be their only remedy somehow. It doesn't make any sense. And Congress clearly didn't reach further than that. Next point, a loss can fall equally on all shareholders and still be a direct claim. Tooley says that. I believe it's quoted in Star. And that reinforces my point about the nature of the financial harm. It wasn't just the voting rights, which necessarily are personal and individual. And the government at page 37 of its brief seems to concede that voting rights are direct in nature. So we can disagree about a lot here, but there doesn't seem to be disagreement on that. And then my my last point, my my friend on the other side argued the merits of this to some extent and whether the Recovery Act prerequisites for conservatorship were satisfied. And none of that really should be contestable now on on a motion to dismiss. It's all well pled. But there aren't factual findings from the Supreme Court that would somehow control here. And in any event, you can read Collins is as making points in support of us. I mean, Collins noted that Fannie and Freddie were still solid at the time. And why would the government scramble as it did? And I respectfully disagree with with my opponent, that this is not alleged in detail. It's from their own documents and emails. Why would the government scramble to obtain consent from the board if any of the other grounds were satisfied? And the government didn't do that. And we think that all that supports at a minimum, allowing this case to go forward on standing. I don't know. I don't know how it comes out on the merits, but those should be litigated. Unless the court has any questions. Thank you, Mr. Green. We appreciate the argument of both of you in the cases submitted. Thank you. That concludes the arguments.